Filed 9/10/21  P. v. Starrett CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL STARRETT,<br><br>    Defendant and Appellant. | F077104<br><br>(Super. Ct. No. F15902527)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Carlos A. Cabrera[*] and John F. Vogt, Judges.[†]

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*]     Retired Judge of the Fresno County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[†]     Judge Cabrera presided over the *Pitchess* motion hearing; Judge Vogt presided over all other hearings pertinent to this appeal.

Appellant Michael Starrett was convicted by jury of possession or control of child pornography with a prior sexual offense (Pen. Code,[1] § 311.11, subd. (b); count 1) and resisting an executive officer (§ 69; count 2). In a bifurcated court trial, the court found appellant had suffered nine prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Appellant was sentenced to indeterminate prison terms of 25 years to life for each count for a total prison sentence of 50 years to life (§ 667, subd. (e)(2)(C)(iv)(III)).

Appellant raises several issues on appeal. First, he requests we independently review the materials reviewed during the in camera hearing on his motion for discovery of information from the officers' personnel files (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531), which respondent does not oppose. Appellant further contends: (1) the trial court reversibly erred by making comments to the jury pool which appellant contends implicated the presumption of innocence and lowered the prosecutor's burden of proof; (2) the trial court erred by denying appellant's motion for self-representation (*Faretta v. California* (1975) 422 U.S. 806); (3) the trial court erred by denying one of appellant's motions to substitute his appointed counsel (*People v. Marsden* (1970) 2 Cal.3d 118); (4) the trial court erred by failing to instruct sua sponte on simple assault as a lesser included offense of resisting an executive officer; and (5) the prosecutor erred during closing argument by improperly telling the jury to believe witnesses if their testimony was reasonable. Finally, to the extent we find appellant has forfeited the issues regarding the trial court's comments during jury selection and the prosecutor's comments during closing argument because his trial counsel failed to object, he contends trial counsel was ineffective for failing to make those objections.

Finding no error, we affirm the judgment.

---

[1] All further undesignated statutory references are to the Penal Code.

## FACTUAL BACKGROUND

Appellant was a resident at Coalinga State Hospital. On February 5, 2014, appellant was in his room lying on his bed using his laptop, when Coalinga State Hospital officers Jose Gonzalez and Carlos Pizarro knocked on appellant's door and entered his room in order to conduct a random search. When Gonzalez told appellant the officers would be searching his room, appellant reached over to a set of drawers and removed an item from under a clock. Gonzalez asked appellant what the item was, and appellant said it was "[n]othing." Gonzalez then told appellant to open his hand, which revealed the item to be a digital memory card. Gonzalez took the memory card from appellant, told appellant he was going to keep it for review, and put it in his pocket.

The officers asked appellant to leave the room so they could conduct the search. After they started searching, appellant appeared nervous and was pacing. Appellant stepped back inside the room before being told he was allowed, causing Gonzalez to pat appellant down for his and Pizarro's safety. Gonzalez found no weapons or contraband on appellant and told appellant to step outside the room again.

As soon as Gonzalez turned around, he felt appellant reach from behind him into his pocket that contained the memory card. Gonzalez grabbed appellant's hand and asked him what he was doing, and appellant forcefully hit Gonzalez's hand with a closed fist in an effort to break loose from Gonzalez's grip. The officers directed appellant to stop what he was doing, and appellant continued to fight to try to get the memory card. Because the officers were unable to gain compliance with verbal commands and appellant continued to resist, they assisted appellant onto the floor for "ground containment."

Appellant had obtained the memory card during the struggle and continued to resist and fight while Gonzalez tried to get the memory card out of appellant's hand. Gonzalez told appellant to stop resisting several times; appellant did not respond and continued to fight to break loose from their hold, kicking and moving around on the floor.

3.

Gonzalez was eventually able to get a hold of appellant's hand, open it, and grab the memory card, at which point he called for backup. Appellant continued to resist and started spitting toward Gonzalez's face. Officer Luz Benitez responded and assisted Gonzalez and Pizarro in containing appellant on the floor. During the struggle, Benitez was kicked by appellant, which resulted in an injury to her hand. At trial, she was unable to open her hand fully and stated she had to medically retire due to the injury.

Gonzalez was eventually able to handcuff appellant and stand him up. Appellant had received a cut on his head from falling to the ground during the incident. Gonzalez escorted appellant to an interview room, and a nurse assessed appellant's cut and cleared him to be interviewed. During his interview with appellant, Gonzalez asked him what was on the memory card that was so important, to which appellant responded, "I don't know." Appellant then told Gonzalez, "I'm sorry I hurt you." Appellant continued to deny he knew what was on the memory card and eventually stopped talking to Gonzalez. Gonzalez booked the memory card into evidence.

Coalinga State Hospital Police Sergeant Jerry Duvall testified as an expert in forensic analysis investigative techniques used for retrieving data from the digital memory card and in determining the ages of persons depicted within the images retrieved from it. Duvall testified there were 3,513 images and 277 videos of child pornography on the memory card seized from appellant.

The parties stipulated appellant had suffered three prior convictions of child molestation (§ 288, subd. (a)), which required him to register under section 290. The parties further stipulated that police officers working for the Coalinga State Hospital Police Department are considered executive officers under California state law.

Appellant relied on the state of the evidence and did not present any of his own evidence.

4.

## PROCEDURAL BACKGROUND

We give a detailed procedural background to put several of appellant's appellate issues in context.

### *The Complaint is Filed, and Appellant is Held to Answer to the Charges*

The complaint was filed on April 24, 2015. Appellant subsequently filed a motion to suppress evidence based on the ground that his expectation of privacy as a patient serving a civil commitment had been violated by the seizure of the memory card. The court heard evidence on the motion to suppress along with the preliminary hearing evidence over the course of three days, October 14, 15, and 16, 2015. Following the hearing, the trial court denied appellant's suppression motion and held appellant to answer to five charges: possession or control of child pornography with a prior (§ 311.11, subd. (b)); battery on a peace officer (§ 243, subd. (c)(2)); two counts of assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)); and resisting an executive officer (§ 69). Appellant pleaded not guilty to the charges contained in the information on November 12, 2015, and the matter was set for jury trial on December 28, 2015.

### *December 17, 2015* **Marsden** *Motion*

At a settlement conference on December 17, 2015, appellant requested a *Marsden* hearing. Judge Jonathan Skiles presided over the hearing. Appellant expressed concern over his attorney, Angelica Rivera, a deputy public defender, having enough time to devote to his case. He indicated he had expected Rivera to present evidence at the preliminary hearing because he had provided her with "extensive exculpatory evidence and numerous . . . witnesses who strongly support [his] innocence." Rivera admitted the investigation was not at a stage where she would like it to be and that appellant raised "some valid points." She further indicated appellant would need to enter a general time waiver to enable her to do the work necessary for his case but ultimately she did not have the time or resources to adequately prepare the case for trial. The court granted

5.

appellant's motion and relieved Rivera, noting to appellant the attorney it would appoint in Rivera's place may have some of the same limitations as Rivera.

The December 28, 2015 trial date was vacated, and a new trial date was set for January 7, 2016. Appellant was appointed attorney Kojo Moore from the firm who handles public defender conflict cases.

### *January 4, 2016* **Marsden** *Motion*

At a settlement conference on January 4, 2016, appellant requested a *Marsden* hearing. Judge Skiles again presided over the hearing at which appellant requested the court to "dismiss" Moore's entire firm from the case. In response, the court asked appellant if he wanted to represent himself, to which he responded, "I don't." Appellant went on to say there was "nobody" that could do what he wants to get done in the timeframe he wants it done "[b]ecause the past injuries . . . are impossible to cure," later clarifying he had not had a "proper preliminary hearing." Moore stated that he had received the case the previous week and had not had time to review the "voluminous" discovery or to speak to appellant and would have to move to continue the trial date. The court found appellant had not shown grounds for granting a *Marsden* motion "specifically given the very short period of time the attorney has been assigned the case" and denied appellant's motion. The settlement conference was continued to January 7, 2016.

### *First Amended Information and October 17, 2016* **Marsden** *Motion*

On January 7, 2016, the prosecutor filed a first amended information, which included only two of the four original charges: possession of child pornography with a prior (§ 311.11, subd. (b)) and resisting an executive officer (§ 69). That day, appellant pleaded not guilty to the charges. A tentative trial date was set for February 4, 2016.

The case was continued a number of times over the next several months, with several trial dates being vacated and new tentative dates being set. Appellant had entered a general time waiver that remained in effect during this period of time.

On August 29, 2016, appellant withdrew his general time waiver, and a tentative trial date was set for October 17, 2016. On October 14, 2016, defense counsel filed a written motion to continue the trial because he had not been able to interview or subpoena certain witnesses but appellant did not want to continue to waive time.

On October 17, 2016, appellant requested a *Marsden* hearing. Judge Alan Simpson presided over the hearing. Appellant stated he needed to "go into a little history on this issue" and explained his previous *Marsden* motion was based on the public defender's officer being underfunded. He stated Rivera did not put any evidence on at the preliminary hearing and it "unjustifiably" resulted in the denial of his suppression motion. He indicated Moore had not done anything to prepare for trial and he no longer wanted to waive time. In response, Moore stated appellant was "fixated" with the preliminary hearing and suppression motion. Moore indicated he had gone over the relevant transcripts and had not found any grounds for further motions in relation to those issues. The court found no good cause to relieve Moore and denied the *Marsden* motion. The matter was trailed to October 27, 2016.

The matter was continued a few more times, with appellant entering a series of specific time waivers.

### *Trial Commences and January 31, 2017* **Marsden** *Motion*

The case was assigned to a trial department, and trial proceedings commenced on January 31, 2017. Appellant requested a *Marsden* hearing that day. Judge John F. Vogt, who was assigned appellant's trial, presided over the hearing. Appellant expressed there was "a lot of evidence" he believed to be critical which Moore had not discussed with him, and Moore had not investigated several witnesses. Appellant also contended the trial court did "not possess the jurisdiction to hear" the case because he had had a "meaningless and ineffective preliminary hearing." In response, Moore stated his investigator had interviewed all witnesses provided by appellant. Moore had considered the option of refiling appellant's suppression motion or filing a writ petition but

7.

ultimately decided not to.  Moore also indicated he had drafted a *Pitchess* motion but was unable to file it because appellant would not waive time to allow it to be served.  The court asked appellant what he thought granting the *Marsden* motion would "do to your situation?"  Appellant replied, "[n]othing," adding that granting the *Marsden* motion would "force us to trial with preestablished prejudice."  Appellant went on to say the most "expeditious way" to resolve the case would be to have it dismissed before trial.  He indicated he desired to file a new motion to suppress supported by "new evidence presented from the transcripts of the preliminary hearing."  The court encouraged appellant to discuss the issues with Moore and stated it did not find the conflicts appellant identified were "permanent or ultimately destructive" to the case and there was not a personality conflict that would interfere with the ability of Moore and appellant to effectively work together.  The court denied appellant's *Marsden* motion.

The court conducted trial proceedings on February 1, 3, and 14, 2017, including hearing several in limine motions and conducting Evidence Code section 402 hearings.

### *February 15, 2017* **Marsden** *Motion and Trial Proceedings are Paused for Appellant to File a* **Pitchess** *Motion*

On February 15, 2017, appellant requested another *Marsden* hearing.  During the hearing, appellant stated that Moore had done "nothing" in the two weeks since his last *Marsden* motion and there was more "crucial" evidence that needed to be investigated.  Appellant stated he had asked Moore to file a section 995 motion,[2] a "[section] 999a for a writ of prohibition,"[3] and a *Pitchess* motion.  In response, Moore reiterated he had

---

[2]  Pursuant to section 995, a criminal defendant may move to set aside the information if he or she was held to answer without reasonable or probable cause.

[3]  Pursuant to section 999a, a criminal defendant may file a petition for writ of prohibition on the grounds the defendant was committed on an information without reasonable or probable cause.  Such a filing must be made in the appellate court "within 15 days after a motion made under Section 995 to set aside the indictment on the ground . . . that the defendant had been committed on an information without reasonable or probable cause, has been denied by the trial court."

8.

investigated everything appellant had asked him to, had considered a section 995 motion but believed it to be inappropriate and frivolous, and had looked into a petition for writ of prohibition but believed it too was inappropriate. Moore again stated he did feel a *Pitchess* motion was appropriate; he had drafted one but had not had time to serve it because appellant had not wanted to waive time. The trial court told appellant it was not inclined to grant the *Marsden* motion because it found the disagreement between he and Moore revolved around appellant's decision not to waive time. The court explained it felt Moore had approached the case appropriately and was prepared to go to trial. The court told appellant that it would give appellant the opportunity to have his *Pitchess* motions heard in the "home court" on the condition that he waive further time. Appellant agreed to vacate the trial date and to waive time so he could pursue the *Pitchess* motions.

In open court, the court stated it was accepting a general time waiver from appellant, vacating that day's trial date, "with the understanding that the matter will remain assigned here for trial but will be sent back to the home court for further pretrial hearings." The following day, the trial court clarified on the record the trial was vacated but actually was "in progress for all intents and purposes."

### *May 4, 2017* Marsden *Motion and* June 22, 2017 Pitchess *Hearing*

On May 4, 2017, appellant requested a *Marsden* hearing. Judge Dennis A. Peterson presided over the hearing. At the hearing, appellant stated "the whole problem" "stems from the fact that I have been asking . . . for some remedy to the fact that I have not had a proper preliminary hearing. That's my main issue." He stated he had asked Moore when Moore was first appointed to file a section 995 motion and to have a "proper preliminary hearing." He then stated he wanted to file an "extraordinary writ of prohibition" to present evidence from his first *Marsden* hearing where the public defender was relieved. Appellant explained he wanted to show the preliminary hearing was not properly conducted and have the case dismissed so he would not have to go to trial. In response, Moore expressed he thought appellant's *Marsden* motion was a "delay

9.

tactic." Moore again stated he had investigated every witness appellant had asked him to investigate. Moore indicated he did not believe there was a breakdown in communication, that he had put a lot of work into the case, and could adequately represent appellant. The court denied appellant's motion noting that tactical disagreements between counsel and defendant were not grounds for granting a *Marsden* motion.

On June 22, 2017, the court granted appellant's *Pitchess* motion as to Gonzalez and Pizarro – only as to prior complaints of fabrication of facts justifying use of force in making an arrest or detention. The court held an in camera hearing where it determined there was no discoverable material.

Appellant's trial was subsequently set to recommence in the original trial department.

### *Appellant's* **Faretta** *Motion and Trial Recommences*

On October 2, 2017, appellant filed a written *Faretta* motion and a motion to continue the trial date to an unspecified date. In his motion to continue, appellant stated he "will be assuming control of this case and will need additional time to investigate issues not previously considered by prior counsel and will need additional time to prepare for trial."

On October 23, 2017, the parties reconvened in the trial department for what was noted on the minute order as the sixth day of trial. After beginning to hear appellant's *Faretta* motion and determining it may cross over to a potential *Marsden* issue, the court excluded all persons from the courtroom except appellant, Moore, and court staff and proceeded with the *Faretta* motion in a closed session.

Appellant stated he believed the case should be dismissed "based on a conflict of interest with the attorney at the preliminary hearing." Appellant explained he understood the court had already found Moore to be appropriate counsel but wished to represent himself in order to file a petition for writ of prohibition so that he would not "lose [his]

10.

right to [a] proper preliminary hearing." Moore stated he had reviewed with appellant the reasons he would not be filing a writ petition. Appellant acknowledged Moore felt the writ petition was "frivolous" but he believed that was not a "valid reason" not to file.

Appellant went on to say there were a "number of officers" and "a dozen" or "maybe ten" witnesses to the incident that appellant believed needed to be interviewed though he did not know who these potential witnesses were. Moore explained he interviewed the witness appellant provided, but the witness's statement hurt appellant's defense. Moore advised the court he was satisfied with the investigation he had conducted in order to identify potential witnesses with exculpatory information.

The court told appellant his request was not timely based on his concurrent request to continue the trial proceedings and its finding appellant had not raised proper grounds for a continuance. The court also did not find appellant had made an "unequivocal request" to represent himself as it appeared it was more based on dissatisfaction with Moore. The court denied appellant's request to represent himself.

When the court was back in open session, the court stated appellant's motion was untimely. The court noted there had already been five days of trial proceedings before a continuance was granted for appellant to make discovery motions and conduct further investigation prior to completion of the trial, and that the trial had already commenced. The court found despite the trial already having commenced, it did not find appellant made a showing of reasonable cause for making his request at that stage of the proceedings. The court then analyzed the quality of representation afforded appellant, appellant's prior proclivity to substitute counsel, the length and the stage of the proceedings, and that appellant had requested a continuance, as set forth in *People v. Windham* (1977) 19 Cal.3d 121 (*Windham*). The court added in addition to appellant's request being untimely, the court did not view appellant's request as unequivocal.

11.

***Appellant's October 24, 2017* Marsden *Motion***

The following day, appellant requested a *Marsden* hearing, raising two issues: (1) that his trial clothes did not fit properly; and (2) that Moore did not retain an expert witness to verify Benitez could not have sustained carpal tunnel by being kicked, as she claimed in the preliminary hearing. Appellant stated, "[T]his is the last straw, Your Honor. I will not deal with Mr. Moore or [his firm]. This trial will be a sham, in my opinion, if it proceeds. He is going to run this trial and I will not communicate with him because he never listens to me. I—I'm just—I'm beside myself." Moore explained that in looking at the transcripts, Benitez "doesn't necessarily say. She says she has multiple injuries, that carpal tunnel is just one of the injuries." Moore confirmed there was evidence of carpal tunnel being documented in Benitez's medical records and that there was no need for an expert to impeach Benitez's testimony on her injuries. The court noted it had witnessed a discussion between the prosecutor and Moore regarding a conflict between the documentary evidence and Benitez's preliminary hearing statements and stated, "[I]t was my understanding before you even mentioned it today that it was something that Mr. Moore was quite prepared to deal with. [¶] . . . [¶] . . . And it doesn't require another expert to be brought in to say this is what the records say. I mean, the witness can be confronted and their prior testimony is of record. [¶] . . . [¶] . . . I don't see that as being a problem at this point." The court went on to state "it's my understanding that [Moore] has reviewed the medical records and that the dates of . . . documented history of carpal tunnel are there for him to impeach [any opinion appellant caused carpal tunnel] . . . . [This issue] hasn't been ignored. . . . I've seen [Moore] confront [the prosecutor] with the issue and I know he's prepared to address it in front of the jury." The court found appellant's motion was based on conflicts that arose from difference of opinion about the course of strategy in the case, which the court noted was Moore's responsibility, and denied the motion.

12.

*The Remainder of Trial and Sentencing*

Jury selection began the afternoon of October 24, 2017, and a jury was empaneled on October 25, 2017. Evidence was presented on October 25 and 26, 2017. The jury began deliberations on October 31, 2017, and returned their verdict that afternoon. Appellant's court trial on his priors was held on November 2, 2017, and he was sentenced on February 28, 2018.

## DISCUSSION

**I. Independent Review of Materials Reviewed at June 22, 2017 *Pitchess* Proceedings**

Appellant requests we independently review the records reviewed at the in camera *Pitchess* hearing to determine whether the trial court abused its discretion in determining there was no discoverable information. Respondent does not oppose this request.

Under *Pitchess*, a defendant may bring a motion for disclosure of certain relevant information in the personnel files of police officers by showing good cause for discovery and how it would support a defense to the charge against him. (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1018–1019; §§ 832.7, 832.8; Evid. Code, §§ 1043–1045.)

When the court finds good cause and conducts an in camera review pursuant to *Pitchess*, the court must hold an in camera hearing, during which the custodian of records brings "all documents 'potentially relevant' to the defendant's motion." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226.) "Subject to statutory exceptions and limitations . . . , the trial court should then disclose to the defendant 'such information [that] is relevant to the subject matter involved in the pending litigation.' " (*Ibid.*)

The court must make a record that will permit future appellate review. (*People v. Mooc*, *supra*, 26 Cal.4th at pp. 1229–1230.) The court may preserve the record by either copying the documents and placing them in a confidential file, preparing a sealed list of the documents it reviewed, or "simply stat[ing] for the record what documents it examined" and sealing the transcript. (*Id*. at p. 1229.)

13.

"A trial court's decision on the discoverability of material in police personnel files is reviewable under an abuse of discretion standard." (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220.)

Here, the trial court granted appellant's *Pitchess* motion "as to prior complaints of fabrication of facts justifying use of force in making an arrest or detention" pertaining to officers Gonzalez and Pizarro, held an in camera hearing and ultimately found no discoverable material. The court had not retained copies of the records it considered and, accordingly, pursuant to order by this court, held an in camera hearing on October 17, 2018, with the custodians present and placed under oath, where the court was presented with the relevant records. The superior court subsequently transmitted to this court the oral proceedings of the June 22, 2017 and October 17, 2018 hearings, copies of the records considered by the trial court, and a settled statement prepared by the trial court subsequent to the October 17, 2018 hearing further documenting the records it reviewed.

We have reviewed all documents provided by the superior court and find they comprise an adequate record for review. In independently reviewing the records provided, we conclude the trial court did not abuse its discretion in declining to disclose any information to appellant.

## II. The Court's Denial of Appellant's October 23, 2017 Motion for Self-Representation (*Faretta* Motion)

Appellant contends the court erred by denying appellant's October 23, 2017 *Faretta* motion. We disagree.

A criminal defendant has a constitutional right to self-representation. (*Faretta v. California*, *supra*, 422 U.S. at pp. 835-836.) A trial court must grant a defendant's request for self-representation if the request is timely and unequivocal, and voluntary, knowing, and intelligent. (*People v. Johnson* (2019) 8 Cal.5th 475, 499 (*Johnson*).) Whether to grant an untimely *Faretta* motion, however, is " 'within the sound discretion of the trial court.' " (*Id*. at p. 499.) Denial of a timely, unequivocal, and voluntary

*Faretta* motion is reversible per se; we review denial of an untimely *Faretta* motion, however, for abuse of discretion. (*People v. Best* (2020) 49 Cal.App.5th 747, 756.)

### A.   *Timeliness*

To determine the proper standard of reversible error, we must determine whether appellant's *Faretta* motion was timely.

Our high court has "long held that a *Faretta* motion is timely if it is made 'within a reasonable time prior to the commencement of trial.' " (*Johnson*, *supra*, 8 Cal.5th at p. 499.) "[T]he 'reasonable time' requirement 'must not be used as a means of limiting a defendant's *constitutional* right of self-representation,' but rather to prevent the defendant from 'misus[ing] the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice.' " (*Ibid*.) A timeliness requirement "reflects that 'the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.' " (*Ibid*.) "[A] defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request." (*Windham*, *supra*, 19 Cal.3d at p. 128, fn. 5.)

In determining whether a motion is timely, the California Supreme Court has rejected the idea of applying a "bright-line rule, explaining that 'nothing in *Faretta* or its progeny either expressly or implicitly precludes consideration of factors other than the number of weeks between the self-representation motion and the trial in determining timeliness.' " (*Johnson*, *supra*, 8 Cal.5th at p. 502.) Rather, our high court has held a trial court "may consider the totality of the circumstances," including " 'not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial

15.

proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation.' " (*Id.* at p. 500.)

The California Supreme Court has not decided whether we review a court's finding that a *Faretta* motion is untimely under the de novo standard of review or standard deferential to the trial court. (*Johnson*, *supra*, 8 Cal.5th at p. 501.) Under either standard we find no error.

Both parties' positions are based on whether the trial in appellant's case had technically commenced at the time he filed his *Faretta* motion on October 2, 2017. Respondent simply contends that trial commenced on January 31, 2017, and thus appellant's request was untimely because it was made long after that date. Appellant, however, contends trial did not commence until October 23, 2017; therefore, his motion was made three weeks before trial. Relying on *Faretta* and Ninth Circuit Court of Appeals cases, he contends the standard in determining whether a motion is timely made is whether it is made " 'weeks before trial.' " As such, because his motion was made " 'weeks before trial,' " his motion was timely, and the court's denial constitutes per se reversible error.[4]

Appellant recognizes in passing that the California Supreme Court has adopted a " 'totality of the circumstances' " analysis for determining whether a *Faretta* request is timely but nonetheless insists the proper analysis only requires us to determine whether

---

**4**      Appellant states the trial court "acknowledged" his motion was timely. He bases this on a statement made by the trial court: "But at this time having reviewed the motion to proceed in pro per to what is called a Faretta motion and in light of all the information received from [appellant] I think it is a questionable call as to whether the request is in fact timely. As I explained to [appellant and Moore], however, for purposes of making sure that all issues of due process are adequately addressed I have entertained any discussions with the idea that the request could be deemed timely." The court went on to explain why it ultimately concluded the request was untimely. We interpret the court's comments not as an "acknowledg[ment]" the request was timely but as a statement indicating it allowed appellant to make his request without summarily denying it as untimely.

16.

or not his request was made " 'weeks before trial,' " under *Faretta* and Ninth Circuit Court of Appeals decisions. As we have explained, the California Supreme Court has expressly held that *Faretta* does not preclude the consideration of other factors and we are bound by those decisions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)[5]

That is to say, even if we were to accept appellant's interpretation that for the purpose of analyzing the timeliness of a *Faretta* request, trial commenced on October 23, 2017, and we do for the benefit of appellant's argument, we are not precluded from considering the unique procedural posture of the case at the time appellant made his motion. We conclude, in the context of the case as a whole, under appellant's interpretation of when trial began – and certainly under respondent's – appellant's motion was not made within " 'a reasonable time prior to the commencement of trial.' " (*Johnson*, *supra*, 8 Cal.5th at p. 499.)

The present case had been pending for approximately two and a half years when appellant requested to represent himself in October 2017. Trial had commenced in January 2017, and was only continued for appellant's benefit, a decision the trial court made based on Moore's representations that he thought *Pitchess* motions could assist in appellant's defense. Before appellant was given the opportunity to pause trial proceedings to bring his *Pitchess* motions, the court had heard the bulk of the parties' in limine motions and was just about to start the jury selection process. At the time, the

---

**5**      Appellant's suggestion we should put weight on the fact that the Ninth Circuit Court of Appeals has adopted a "weeks before trial" standard is not persuasive. Our high court has recently reiterated that "[a]lthough we recognize that some federal appellate decisions have adopted a different approach [such as holding a *Faretta* motion timely if it is made before trial], we see no compelling reason to reconsider the [totality of the circumstances] standard set forth by *Lynch* at this time." (*Johnson*, *supra*, 8 Cal.5th at p. 502.) While state courts applying federal law are bound by decisions of the United States Supreme Court (*Elliott v. Albright* (1989) 209 Cal.App.3d 1028, 1034), we are not bound by district or circuit court decisions (*Yee v. City of Escondido* (1990) 224 Cal.App.3d 1349, 1351).

prosecutor represented that witnesses had been subpoenaed for trial a total of three times, which would make October 2017 the fourth.

More importantly, in the years appellant's case was pending, appellant had ample opportunity to raise his request to represent himself. As early as the January 2016 *Marsden* hearing, just two weeks after Moore was appointed to appellant's case, the court directly asked appellant if he wanted to represent himself, to which appellant responded in the negative. Yet, the reasons appellant stated for wishing to represent himself in October 2017—to pursue motions and writ relief related to his preliminary hearing and denied suppression motion—existed at the time of the January 2016 *Marsden* hearing and were subsequently raised several times throughout the duration of the case through the many other *Marsden* motions appellant made. The record thoroughly demonstrates appellant was well aware, for a period of years, Moore had considered the options appellant wished to pursue and had no intention of complying with appellant's wishes as he felt further litigation on them would have been frivolous. Appellant even concedes in his opening brief that he "primarily raised the *exact same complaints*" (italics added) in each of his *Marsden* motions. Despite this concession and the well-developed record on his wishes to pursue remedies in connection with his preliminary hearing, however, he does not, on appeal nor below, explain why he could not have requested self-representation earlier. Appellant's waiting to raise this request until the trial was ready to proceed to jury selection for the second time, was not timely under the circumstances.

In considering the totality of the circumstances, we conclude the motion was not brought within a reasonable time before trial.

## B. *Abuse of Discretion*

Having concluded appellant's *Faretta* motion was untimely, we now turn to whether the trial court's denial was an abuse of discretion.

In assessing an untimely *Faretta* motion, the court must consider "the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute

counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Windham*, *supra*, 19 Cal.3d at p. 128.)

The trial court here did not abuse its discretion by denying appellant's *Faretta* motion. Appellant required additional time to pursue remedies for perceived errors relating to his preliminary hearing and denied suppression motion and to investigate witnesses he admitted were unknown. Appellant's dissatisfaction with Moore for not adequately addressing these issues were, as we have stated, well documented, so the record amply demonstrates Moore had considered the remedies appellant wished to pursue and believed them to be frivolous, had investigated all witnesses identified by appellant, and had investigated other potential witnesses who may have had exculpatory information. Moore was prepared to go to trial and had considered all issues raised by appellant, whereas appellant required additional time to do either what Moore had already done or deemed unnecessary.

The court did not err by denying appellant's *Faretta* motion.

### III. The Court's Denial of Appellant's October 24, 2017 Motion for New Counsel (*Marsden* Motion)

Appellant contends the trial court erred by denying appellant's October 24, 2017 *Marsden* motion. We disagree.

In considering whether to grant or deny a defendant's motion to obtain new counsel on the basis that his appointed counsel is providing inadequate representation, commonly referred to as a *Marsden* motion, the trial court "must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance." (*People v. Smith* (2003) 30 Cal.4th 581, 604 (*Smith*).) "A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*Ibid.*) A trial

court's inquiry is sufficient to develop a record for review when the court gives the defendant "full opportunity to air all of his complaints, and counsel to respond to them." (*Id*. at p. 606.)

We review a court's denial for abuse of discretion. Denial is not an abuse of discretion "unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." (*Smith*, *supra*, 30 Cal.4th at p. 604.) The reviewing court must consider: " ' "(1) [the] timeliness of the motion; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense." ' " (*Id*. at p. 606.) To the extent there are credibility questions between defendant and counsel at a *Marsden* hearing, a trial court is entitled to accept counsel's explanation. (*People v. Jones* (2003) 29 Cal.4th 1229, 1245.)

First, appellant contends the court erred by failing to inquire as to whether Moore had consulted with an expert witness to impeach Benitez's testimony that she could not have received carpal tunnel from being kicked. We conclude the trial court's inquiry was adequate regarding appellant's claims with regard to Benitez. The court demonstrated a clear understanding of the factual issue and asked Moore to respond to appellant's claim an expert witness was needed. Moore clearly expressed he did not feel there was a need for an expert to impeach Benitez. There was discussion indicating carpal tunnel was documented in Benitez's medical records in Moore's possession, which could be used for the same impeaching effect. This was adequate and no specific inquiry as to whether Moore actually consulted with an expert was necessary; the court gave appellant an opportunity to raise his concerns about the need for an expert witness. After hearing appellant's concerns and having a discussion with Moore, the court reasonably satisfied itself based on the representations of appellant and Moore as well as its own

20.

understanding of the issues that Moore's decision not to retain an expert did not constitute inadequate representation.[6]

Next, appellant contends the court erred by failing to inquire into the nature of the attorney-client relationship with Moore regarding his attempts to communicate with appellant over the months leading up to trial and the content of those discussions, if any. Appellant represented to the court he had not spoken to Moore "in several months now" and had expected him to consult with an expert in that period of time. Though the court did not specifically address this claim with Moore, we conclude inquiry into the details of Moore's alleged lack of communication with appellant was not necessary in light of the detailed inquiry the court made into Moore's preparedness of the issues appellant raised.

---

[6] We note that though the court did not specifically ask Moore whether he had consulted an expert, there is evidence on the record that he had in fact previously done so. During the January 31, 2017 *Marsden* hearing, Moore stated he had subpoenaed a worker's compensation doctor who could state Benitez's injury came from carpal tunnel, "not necessarily from [appellant]." It appears Moore eventually determined the doctor was not needed as a witness based on the reasons discussed at the October 24, 2017 *Marsden* hearing.

We also note the issue of carpal tunnel did not come up during Benitez's trial testimony, and though appellant contends the issue was "critical to his defense on count 2," appellant does not raise any ineffective assistance of counsel claims with regard to Moore's cross-examination of Benitez on appeal or that we are aware of by writ petition. We further note that though appellant had suggested to the trial court that during her preliminary hearing testimony Benitez had claimed appellant caused carpal tunnel and that an expert was needed to impeach that testimony, in reviewing the transcripts, it appears Benitez did not make such a statement. Thus, the impeachment value of evidence that tended to show appellant could not have caused carpal tunnel was low. In any event, the exact nature of Benitez's injuries were more relevant to charges alleging great bodily injury and battery, charges to which appellant was initially held to answer but were later dropped from the case. In fact, during the February 15, 2017 *Marsden* hearing, appellant characterized her statement that way, stating Benitez "claims there was great bodily injury because I kicked her wrist," to which the court responded, "Well, that's not alleged at this point so that's not an issue." In response, appellant went on to explain he felt Benitez's claim was "in part due to a conspiracy. All four of these officers conspired to, you know, just—I mean, it's a general environment of, you know, making sure that they back each other."

When a court has satisfied itself that counsel is adequately prepared, it may deny a *Marsden* motion even if he or she had not communicated fully with his or her client. (*People v. Wharton* (1991) 53 Cal.3d 522, 580–581.) Here, appellant's main issue was whether Moore could adequately impeach Benitez's testimony. As we have explained, the court inquired thoroughly into this topic and Moore indicated he understood the issue and was prepared to deal with it. The court was reasonable in finding Moore was prepared to cross-examine Benitez despite the alleged lack of contact.

Finally, appellant contends he had met his burden of showing there had been a total breakdown of the relationship between himself and Moore. We are not convinced. Moore contended he was ready to proceed to trial and made no claim he was unable to represent appellant. While appellant and Moore disagreed about the need for an expert to impeach Benitez, the trial court was well within its discretion in determining this was not grounds to grant appellant's *Marsden* motion. A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense. (See *People v. Hamilton* (1989) 48 Cal.3d 1142, 1162.) "Tactical disagreements between the defendant and his attorney do not by themselves constitute an 'irreconcilable conflict.' 'When a defendant chooses to be represented by professional counsel, that counsel is "captain of the ship" and can make all but a few fundamental decisions for the defendant.' " (*People v. Welch* (1999) 20 Cal.4th 701, 728–729.)

Further, appellant's claim he would no longer communicate with Moore is not enough to satisfy his burden at a *Marsden* hearing. A *Marsden* motion may be denied if the defendant has willfully refused to cooperate with appointed counsel, thereby possibly hampering his own defense. (*People v. Roldan* (2005) 35 Cal.4th 646, 682, disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; see *People v. Johnson* (2018) 6 Cal.5th 541, 574 [a defendant may not force the substitution of counsel by manufacturing a conflict or a breakdown in the relationship through his own conduct]; see *Smith, supra,* 30 Cal.4th at p. 606 ["A defendant may not effectively veto an

22.

appointment of counsel by claiming a lack of trust in, or inability to get along with, the appointed attorney."].)

Appellant failed to make a showing that Moore was truly providing inadequate representation or there had been a total breakdown in the relationship that appellant did not cause. The court allowed appellant to express each issue fully, addressed each of appellant's issues, and satisfied itself that Moore was prepared to address all appellant's concerns at trial.

We find no abuse of discretion.

## IV. The Court's Comments to the Jury Pool Explaining the Criminal Process

During jury selection, one of the prospective jurors made the following comment: "I understand [the court] said over and over again, just that I know that obviously [appellant's] come to trial, so the D.A. feels like there's evidence to—to bring charges."

In response to this comment, the court stated:

> "You raise [a] point about—while the district attorney has brought these charges and we're here at trial and, you know, the implication is or the inference is that, well, obviously, there's something there, but let's talk about that. This case and all cases go through a number of processes before they reach [this department] for trial, okay. There are a number of steps and there are a number of standards of review that things go through to advance along in the process.

> "When an officer makes an arrest on the streets, and I'm not—I'm going to make it specifically not particular to this case. When an officer makes an arrest out on the street, it's based on a standard of probable cause. Is there reason to believe that a crime has been committed in my presence or in somebody's presence who is reporting it directly to me, okay? If there's reasonable suspicion for that, probable cause, then the officer has the right and the authority to make an arrest. Thereafter, further into the process the district attorney will make a determination as to whether there is a basis for filing charges and bringing the matter to court at all, and then there is a step of a—what is usually called a preliminary hearing in which there is a further probable cause determination as to whether there is sufficient evidence to allow the case to go to trial, okay. Never in that

23.

process is the case examined at this level of proof beyond a reasonable doubt. That's what the trial is all about.

"Now, there can be smoke above a fire and you can see the smoke and assume there's a fire, but you have no idea how the fire got started, where it actually is and what is fueling it, okay. So there are all kinds of questions that you have to answer in order to get to the ultimate conclusion of whether there is proof beyond a reasonable doubt. We wouldn't be here for no reason, but we have never examined this case at the standard of proof beyond a reasonable doubt. So the way I've defined it is the best I can do. There's no numerical standard for what proof beyond a reasonable doubt is. The other—the other standards of proof have a more—a more numerical kind of value to them. Probable cause is more likely than not, okay, but that's certainly a lot different than proof beyond a reasonable doubt. So when you look at what this job actually calls upon you to do, it's to make that ultimate call.

"Remember when you guys first came in here yesterday, I said you guys make the most important decisions in this courthouse, and that's it, that's—that's the ultimate call that gets made in this courthouse. Is there proof beyond a reasonable doubt that somebody is guilty? So that's the job that we're asking you to do."

Appellant contends the court's comments had the effect of "unnecessarily compromis[ing] the presumption of innocen[c]e and lighten[ing] the burden of proof on the prosecution." Appellant contends the court inappropriately apprised the jury pool that: (1) law enforcement must make a determination "of probable cause" before arresting a suspect; (2) the district attorney must make a "determination as to whether there is a basis for filing charges and bringing the matter to court at all"; and (3) at a preliminary hearing, there must be a "further probable cause determination as to whether there is sufficient evidence to allow the case to go to trial."

To the extent we find any of appellant's claims have been forfeited, appellant contends his counsel rendered ineffective assistance by failing to object below. Without deciding whether appellant forfeited any of his claims, we review them on their merits because such is relevant to his ineffective assistance of counsel claim.

We conclude the court's comments did not constitute error.

24.

*People v. Mitcham* (1992) 1 Cal.4th 1027, a California Supreme Court case relied on by respondent, is on point. In *Mitcham*, during cross-examination of a witness on her preliminary hearing testimony, the trial court, on its own initiative, explained to the jury what a preliminary examination was, including that " 'a judge in the Municipal Court must make the determination if there's sufficient evidence to hold a person to answer for trial. [¶] Now, the standard of proof is not beyond a reasonable doubt, it has to be a reasonable suspicion. [¶] How does a Municipal Court judge determine that? He determines that by testimony.' " (*Id*. at p. 1052, italics omitted.) The appellant in *Mitcham* contended the trial court's comments constituted prejudicial error because the trial court improperly referred to the appellant's guilt and in essence that at least one judge previously had concluded, after hearing evidence, that the appellant was guilty. (*Id*. at p. 1053.) The *Mitcham* court rejected the appellant's argument and concluded the trial court did not indicate to the jury that another judge or anyone else had determined the appellant was guilty. The *Mitcham* court explained "rather than create a prejudicial misconception of the preliminary hearing process, the comments tended to eliminate any misconception." (*Ibid*.) The court found no error "[b]ecause the court's comments were accurate and nonargumentative." (*Ibid*.)

We find the comments here are analogous to the comments made in *Mitcham*. At the outset, the context of the court's comments tended to, like the comments in *Mitcham*, eliminate misconception about what, if any, factual determinations had been made about appellant's case before trial. The comments were made in response to the juror's incorrect suggestion that appellant's mere presence in trial negated the presumption of innocence and were clearly intended to neutralize the juror's statement and disabuse the jurors of such a misconception. Second, the comments themselves, like those in *Mitcham*, were accurate. By noting the case had never been scrutinized by a standard of beyond a reasonable doubt, the court reinforced, rather than undermined, the prosecutor's burden of proof. Further, and also like in *Mitcham*, the comments were

25.

nonargumentative. The court never suggested the previous determinations tended toward appellant's guilt, but just the opposite, that the jury was scrutinizing the evidence at a standard that no other party ever had. This reinforced the presumption of innocence. Finally, the court's comments were general and did not align with the facts of appellant's case; the court even expressly stated its comments were not specific to appellant's case.

None of the cases appellant cites persuade us that *Mitcham* is substantially distinguishable and that it does not control in the circumstances of the present case. In *People v. Wayne* (1953) 41 Cal.2d 814, 829, during closing argument, the prosecutor told the jury to " 'keep in mind' " that the grand jury had heard the evidence and " 'the indictment was returned by a responsible group of citizens who believed the evidence showed that [the defendant] had committed the crimes charged.' " (*Id.* at pp. 828–829.) The California Supreme Court held the prosecutor's comment "as to what the grand jury believed was improper [citations] and in any reasonably close case could well require reversal of the judgment." (*Id.* at p. 829.)

In *People v. Modesto* (1967) 66 Cal.2d 695, the California Supreme Court found error where the prosecutor repeatedly impressed upon the jury he was personally convinced of the defendant's guilt and that he had persuaded two previous juries and two other trial judges that the appellant "deserved to die." (*Id.* at p. 714.) The court held: "Whatever the guilt of the defendant, he is surely entitled to a trial uninfected by hearsay references to conclusions which others have reached on the basis of unspecified evidence, much of which has subsequently been ruled improper, and none of which defendant could effectively challenge in the present trial." (*Id.* at pp. 715–716, fns. omitted.)

Both *Wayne* and *Modesto* are distinguishable because, unlike in *Mitcham*, the prosecutor's comments were argumentative and were meant to persuade the jury to come to the same conclusion as others had. In contrast, the trial court's comments in the present case were meant to have the opposite effect, to explain the jury's task was to evaluate a case at a higher standard of proof than it had been previously.

Appellant also relies on the Ninth Circuit Court of Appeals case, *Mach v. Stewart* (9th Cir. 1998) 137 F.3d 630. In *Mach*, a case of sexual conduct with a minor under age 14, during voir dire, a juror had stated she worked with children as a social worker for at least three years and made four separate statements she had *never* been involved in a case in which a child accused an adult of sexual abuse that had not been proven and another statement she had never known a child to lie about sexual abuse. (*Id*. at pp. 632–633.) The appellate court held such statements created a bias which violated the appellant's right to an impartial jury and necessitated reversal. (*Id*. at p. 633.) Appellant contends the trial court's comments here amounted to " 'expert-like' opinions and conclusions" akin to the comments in *Mach*. We disagree with appellant's characterization. The court's comments were much more akin to those in *Mitcham*—an accurate summary of the criminal process intended to demonstrate the beyond a reasonable doubt standard of proof—and were a far cry from the inflammatory, prejudicial, and relatively fact-specific comments in *Mach*.

Because we find no error, we reject appellant's argument that his counsel was ineffective in failing to object to it. (See *People v. Anderson* (2001) 25 Cal.4th 543, 587 ["Counsel is not required to proffer futile objections."]; *People v. Price* (1991) 1 Cal.4th 324, 387 ["Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile."].)

## V. The Court's Failure to Instruct on Simple Assault as a Lesser Included Offense to Resisting an Executive Officer

Appellant contends the court erred by failing to instruct the jury sua sponte on simple assault (§ 240) as a lesser included offense of count 2. Count 2 alleged appellant violated section 69, resisting an executive officer, by "unlawfully attempt[ing] by means of threats or violence to deter or prevent Luz Maria Benitez, Carlos Pizarro and Jose Gonzalez, who was then and there an executive officer, from performing a duty imposed

27.

upon such officer by law, and did knowingly resist by the use of force or violence said executive officer in the performance of his/her duty."

The parties agree simple assault was a necessarily included offense of resisting an executive officer in the present case under the accusatory pleading test. Respondent does not address whether the trial court erred by failing to instruct the jury on simple assault but contends any error by failing to instruct on simple assault was harmless. We agree with respondent that any error was harmless.

As the California Supreme Court explained in *People v. Breverman* (1998) 19 Cal.4th 142 (*Breverman*), "an erroneous failure to instruct on a lesser included offense is [not] *necessarily* prejudicial, on the premise that if the evidence was substantial enough to warrant lesser offense instructions in the first place[;] [the evidence] must have been strong enough to affect the outcome had the instructions not been omitted." (*Id.* at p. 177.) The standard used to determine whether the evidence supports the instruction be given and the standard used to determine whether the error affected the outcome of the trial meriting reversal are "distinct." (*Ibid.*)

A trial court's erroneous failure to instruct on a lesser included offense in a noncapital case is state law error to be reviewed under the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Beltran* (2013) 56 Cal.4th 935, 955; *Breverman, supra*, 19 Cal.4th at pp. 177–178.) Under *Watson*, " 'a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error.' " (*People v. Beltran*, at p. 955.) The test " 'focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.' " (*Id.* at p. 956, quoting *Breverman*, at p. 177.)

As relevant here, a defendant can reasonably be found not guilty of section 69 but guilty of the lesser crime of simple assault when the defendant uses force or violence to resist arrest in response to an officers' *unreasonable* force. (*People v. Brown* (2016) 245 Cal.App.4th 140, 154.) In such a case, an executive officer would not be lawfully executing his or her duty, negating that element of the crime. (See CALCRIM No. 2652.)

Appellant contends the failure to instruct on simple assault was prejudicial because the jury could have concluded from the record both the officers *and* appellant used unreasonable force and therefore that the lesser offense of simple assault, but not the greater offense of resisting an executive officer, was committed. Appellant contends the jury could have determined the officers used unreasonable force by bringing him down to the ground because of the evidence that appellant sustained a laceration to his forehead. We disagree.

There is no reasonable probability the failure to give the simple assault instruction would have affected the jury's verdict on count 2. Though appellant sustained a laceration to his forehead during the incident, the evidence the officers did not use unreasonable force was strong. According to Pizarro, appellant was "assisted . . . to the floor" because he was ignoring verbal commands and physically fighting Gonzalez to regain possession of the memory card. The officers pushed forward on appellant's upper body to contain him to the floor, which was a technique they were trained to use. When cross-examined, Gonzalez did not recall kicking or sweeping appellant's feet to get him on the floor. Gonzalez testified the technique used was approved by the police department and the Coalinga State Hospital, and Pizarro testified it was "appropriately appl[ied]." The officers were armed with pepper spray and a baton, but did not use them, and there was no evidence the officers kicked or beat appellant.

While Gonzalez testified appellant fell on his head and the impact caused appellant to bleed, there was no evidence of an injury disproportionate to the

29.

circumstances of the technique used by the officers to raise an inference the officers used unreasonable force. The injury was described as a "small laceration above his eyebrow." Appellant was immediately evaluated by a nurse, who cleared him to be questioned by Gonzalez, and though he was later taken to an urgent care room for further treatment of the injury, appellant did not need to be taken to the emergency room. Appellant did not present affirmative evidence that the officers used unreasonable force.

Because the evidence the officers used unreasonable force was relatively weak and the evidence they were acting in lawful performance of their duty as executive officers was strong, we conclude there is no reasonable likelihood that giving the instruction on simple assault would have affected the jury's verdict. Any error was harmless.

## VI. The Prosecutor's Comments to the Jury in Closing Argument That They Should Consider Whether the Witnesses' Testimony Was "Reasonable"

In the prosecutor's closing argument, he reiterated the factors on witness credibility outlined in CALCRIM No. 226. At the end of this discussion, he stated:

> "Finally, how reasonable is the testimony when you consider all the other evidence in the case? Is their testimony reasonable? Does it seem reasonable to you or does it seem unreasonable? No, this—this couldn't have happened. You take that into account when you make your deliberations."

Appellant contends the prosecutor committed misconduct by making these comments because they constituted "urg[ing] the jury to accept the testimony of the prosecution witnesses if the testimony appeared 'reasonable.' "

Appellant's argument fails at the outset and requires little discussion because he mischaracterizes the record. The prosecutor did not in any way suggest to the jury that if a witness's testimony is reasonable, it should be accepted, as appellant contends. Rather, the prosecutor's comments on their face were a direct reiteration of the portion of CALCRIM No. 226, which reads: "How reasonable is the testimony when you consider all the other evidence in the case?" The prosecutor did not improperly tell the jury what

to do with the reasonableness of witnesses' testimony other than simply to consider it, which was permissible, as they were instructed to do so by the trial court in CALCRIM No. 226. Appellant does not assert CALCRIM No. 226 misstates the law. We find no error.

Appellant asserts Moore rendered ineffective assistance of counsel by failing to object to the prosecutor's comments. Because the prosecutor committed no error, we find no ineffective assistance of counsel. (See *People v. Anderson*, *supra*, 25 Cal.4th at p. 587.)

## **DISPOSITION**

The judgment is affirmed.


                                                                    DE SANTOS, J.

WE CONCUR:


MEEHAN, ACTING P. J.


SNAUFFER, J.